JUSTICE McCLANAHAN, concurring in part and dissenting in part.
I concur in the Court's judgment that the circuit court properly dismissed the claims asserted in the amended complaint against Gospel Tabernacle Church of God in Christ and Church of God in Christ, Inc. (the "church defendants") for negligent hiring, retention, and supervision; negligent infliction of emotional distress; and punitive damages.
I believe the amended complaint states a legally viable claim against the church defendants based on the theory of respondeat superior, but not on the theory of a special custodial relationship. Therefore, I concur in the Court's judgment that the circuit court erred in dismissing the respondeat superior claim against the church defendants because, as the Court holds, the amended complaint alleges that Don Billups was an employee and/or agent of the church defendants and was acting within the scope of this employment and/or agency when he sexually abused A.H.[1]
I dissent, however, from the Court's judgment that the amended complaint alleges sufficient facts to state a claim for negligence against the church defendants based upon a special custodial relationship between A.H. and the church defendants. First , the amended complaint does not allege that A.H. was in the custody of the church defendants when she was sexually abused by Billups or allege sufficient facts to support such a contention even if it were made. Second , notwithstanding my position that the amended complaint fails to allege sufficient facts to support the existence of a special custodial relationship between A.H. and the church defendants when she was sexually abused by Billups, I believe it is unnecessary to reach that question because the facts alleged are insufficient to show that it was reasonably foreseeable to the church defendants that A.H. would be sexually abused by Billups.
I.
As the majority states, "Don Billups, not the church defendants, sexually abused A.H.," and "[a]s a general rule, there is no duty to warn or protect against acts of criminal assault by third parties." See, e.g., Brown v. Jacobs , 289 Va. 209, 215, 768 S.E.2d 421 (2015) ("Generally, 'a person does not have a duty to warn or protect another from the criminal acts of a third person.' ") (quoting Commonwealth v. Peterson , 286 Va. 349, 356, 749 S.E.2d 307 (2013) ). We have recognized, however, that "this general rule does not apply when a special relationship exists between a defendant and a plaintiff that gives rise to a right to protection to the plaintiff." Kellermann v. McDonough , 278 Va. 478, 492, 684 S.E.2d 786 (2009). "Some of the special relationships recognized by this Court include common carrier/passenger; innkeeper/guest; employer/employee; business owner/invitee; and hospital/patient." Brown , 289 Va. at 215, 768 S.E.2d 421.
Although the amended complaint asserts that a special relationship existed between the church defendants and A.H. premised upon their custody of her, it does not allege that A.H. was in the custody of the church defendants when she was sexually abused by Billups.[2] The amended complaint does not allege that A.H. was on church premises when she was sexually abused by Billups or that she was on premises owned or controlled by the church defendants when she was sexually abused by Billups; rather, the amended *481 complaint alleges that Billups sexually abused her "at his home." While the amended complaint alleges that all defendants "voluntarily took the custody" of A.H. in general, and without any reference to time or place, it does not allege that the church defendants took the custody of her when she was in Billups's home and, in particular, when she was sexually abused by Billups in his home.
The amended complaint also does not allege facts supporting an inference that A.H.'s parents relinquished their custody of her to the church defendants when she was sexually abused by Billups in his home. The amended complaint does not allege any facts describing how A.H. came to be at the Billups residence at any time and, in particular, on the dates she was sexually abused by Billups in his home. The amended complaint does not allege any facts describing the circumstances surrounding A.H.'s visits to the Billups residence, such as whether her parents or any other adults were there, and in particular, any facts supporting an inference that she was deprived by the church defendants of her normal means of protection on the dates she was sexually abused by Billups in his home.
Furthermore, even if the amended complaint asserted that A.H. was in the custody of the church defendants when she was sexually abused by Billups, or that A.H. was in the custody of the church defendants when she was in Billups's home, it does not allege that the church defendants authorized Billups to take A.H. into custody on the church defendants' behalf. The amended complaint does not allege that the church defendants authorized Billups to invite youth members into his home, and in particular, that the church defendants authorized him to invite youth members into his home without other adult supervision. Rather, the amended complaint alleges the church defendants "knew or should have known that [A.H.] visited the Billups' residence in Covington, Virginia in conjunction with Drill Team activities and would otherwise engage in activities alone with Defendant Don Billups." Even if the church defendants' alleged knowledge that A.H. "visited the Billups' residence ... in conjunction with Drill Team activities" could constitute authority to invite youth members into his home, which it does not, the amended complaint does not allege when the church defendants allegedly came to know of such visits.
While the majority recites numerous allegations made in the amended complaint to support its conclusion that the amended complaint sufficiently alleges that a special custodial relationship existed between A.H. and the church defendants, none of these allegations asserts that A.H. was in the custody of the church defendants when she was sexually abused by Billups - proof of which should be required but is not even pled under the amended complaint. In my view, the allegations are wholly insufficient to support an assertion - which is not even made in the amended complaint - that A.H. was in the custody of the church defendants when she was sexually abused by Billups in his home. As this Court has recognized, "we are not bound to accept conclusory allegations in a review of a demurrer," Ogunde v. Prison Health Servs. , 274 Va. 55, 66, 645 S.E.2d 520 (2007), and we certainly should not rely upon allegations that are not made in the pleadings. Therefore, I do not believe that the amended complaint alleges sufficient facts to support the contention that a special custodial relationship existed between A.H. and the church defendants when A.H. was sexually abused by Billups.
II.
Although I do not believe the amended complaint alleges sufficient facts to establish that a special custodial relationship existed between the church defendants and A.H. when she was sexually abused by Billups, I also believe it is unnecessary to reach that question. Under the facts alleged in the amended complaint, the sexual abuse by Billups was not reasonably foreseeable by the church defendants as a matter of law.
The determination that a special custodial relationship exists between a defendant and plaintiff is not dispositive of the issue of whether the defendant owed a duty to protect the plaintiff from the criminal act of a third party because "the court must also conclude the defendant knows of the danger *482 of an injury or has reason to foresee that danger before a duty to warn or protect against third party criminal act will be imposed." Terry v. Irish Fleet, Inc. , 296 Va. 129, 136 n.3, 818 S.E.2d 788 (2018). Thus, "assum[ing] without deciding that a special relationship exists, the question becomes whether, as a matter of law, under the facts and circumstances of this case, the [church defendants] had a duty to warn [A.H.] about the potential for third party criminal acts." Peterson , 286 Va. at 357, 749 S.E.2d 307. "Certain special relationships ... impose a duty to warn when the danger of third party criminal acts is known or reasonably foreseeable" while other relationships impose "a duty to warn of third party criminal acts only where there was 'an imminent probability of injury' from a third party act." Id. Even where the Court has recognized a duty to protect against criminal acts that are known or reasonably foreseeable, this Court has "frequently concluded that the duty to warn was not present as a matter of law." Id. at 358, 749 S.E.2d 307.[3]
"Here, even if this Court were to apply the less stringent standard of 'know or have reasonably foreseen,' there simply are not sufficient facts from which this Court could conclude that the duty to protect [A.H.] against third party criminal acts arose as a matter of law." Id. at 359, 749 S.E.2d 307. The amended complaint alleges that A.H. was sexually abused by Billups in his home between 2006 and 2010. According to the allegations, it was reasonably foreseeable to the church defendants that Billups would sexually abuse A.H. because "[in] January 2003, a 13 year old victim came forward and disclosed that Don Billups had sexual contact with her in the Summer of 2002" and that "[u]pon information and belief, prior to Defendant Donald Billups'[s] abuse of plaintiff A.H.," the church defendants "became aware of" the 2003 allegation through "a criminal and/or social services investigation."
Thus, while the amended complaint alleges the church defendants knew of the 2003 allegation, it does not allege any facts regarding this allegation, whether this allegation was verified, how the investigation into this allegation was resolved, or what the church defendants knew of the resolution of this investigation. In other words, if plaintiff proves at trial the allegations made in the amended complaint, plaintiff will prove only that the church defendants knew that an allegation against Billups was made by an unidentified minor, concerning an alleged incident that was committed in an undefined manner, at an unknown location, under unknown circumstances, and that the alleged incident was investigated by social services and/or law enforcement who took no action against Billups. Therefore, it cannot be said that the sexual abuse of A.H. was known or reasonably foreseeable to the church defendants. See, e.g., Peterson , 286 Va. at 359, 749 S.E.2d 307, (holding that "[b]ased on the limited information available to the Commonwealth [regarding the shooting in a dormitory earlier in the morning], it cannot be said that it was known or reasonably foreseeable that students in [another building on campus] would fall victim to criminal harm").[4]
*483 Accordingly, assuming without deciding that a potential duty to protect A.H. arose from a special custodial relationship between A.H. and the church defendants, I would hold that the sexual abuse of A.H. by Billups was not known or reasonably foreseeable by the church defendants as a matter of law.
As a result, I concur in part and dissent in part from the Court's disposition of this appeal.

Specifically, the majority concludes that because "A.H. alleges that Don Billups was an employee or agent of the church defendants," she is entitled to the rebuttable presumption that he was acting within the scope of his employment when he sexually abused her and that "A.H. enhances that presumption by specifically alleging that Don Billups abused her 'in the course of performing duties that were within the scope of his employment and/or agency with [the church defendants].' "

The majority states that "[a]ccording to A.H., it was while she was in the custody of the church defendants that Don Billups sexually abused her." This allegation, which is conclusory in itself, is actually not made in the amended complaint.

Indeed, when applying the "known or reasonably foreseeable" standard, "[i]n only rare circumstances has this Court determined that the duty to protect against harm from third party criminal acts exists." Id. at 359, 749 S.E.2d 307. See, e.g., Taboada v. Daly Seven, Inc. , 271 Va. 313, 325-326, 626 S.E.2d 428 (2006) (holding that allegations were sufficient to survive demurrer where hotel employees called police 96 times over a three year period immediately prior to attack to report criminally assaultive acts and hotel had received warning from police that guests were at a specific and imminent risk of harm).

The majority acknowledges that "the amended complaint does not assert any specifics about the allegation or how, if at all, any social services or law enforcement authorities resolved it," and includes only a "vague description" absent "any assertion that the responsible authorities had verified it." For these reasons, the majority holds that the 2003 allegation is insufficient to support a claim that the church defendants were negligent "in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm [others]," Southeast Apts. Mgmt., Inc. v. Jackman , 257 Va. 256, 260-61, 513 S.E.2d 395 (1999). Yet, the majority concludes that the 2003 allegation is sufficient to show that it was known or reasonably foreseeable to the church defendants that Billups would harm A.H., so as to impose a duty upon the church defendants to protect A.H. from Billups. The majority reasons that the 2003 allegation gave rise to a duty to protect A.H. because "the church defendants did nothing" to protect her, including taking "no action against Donald Billups to report such allegations to legal authorities." The contention that a duty to protect A.H. was imposed upon the church defendants because they did not protect her is a non sequitur, is circular reasoning, and does not address the relevant inquiry, which is whether there are factually plausible averments that it was known to the church defendants, or reasonably foreseeable to them, that Billups would harm A.H.