COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Callins and Frucci
Argued at Lexington, Virginia


ABIGAIL EGAN, ET AL.

MEMORANDUM OPINION* BY
v.        Record No. 1022-24-3                    JUDGE STEVEN C. FRUCCI
AUGUST 26, 2025
DAVID REAM, ET AL.


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Hannah Bowie (Osterbind Law, PLLC, on briefs), for appellants.

Stacy L. Haney (R. Matthew Black; Haney Phinyowattanachip,
PLLC, on brief), for appellee David Ream.

Matthew J. Schmitt (Jim H. Guynn, Jr.; Guynn Waddell, P.C., on
brief), for appellee Shannon Hixon.


The Circuit Court of Bedford County sustained two demurrers to Abigail and Jacqueline

Egan's (the "Egans") amended complaint for gross negligence and willful and wanton conduct.  The

Egans alleged that Shannon Hixon and David Ream were liable for gross negligence and willful and

wanton conduct in failing to protect Abigail from the sexual assault from another student.  On

appeal, the Egans argue that the circuit court erred in holding that they failed to sufficiently allege

facts of gross negligence and willful and wanton conduct.  The Egans also contend that the circuit

court erred by dismissing their claims with prejudice and not granting their request for leave to

amend.  In a cross-assignment of error, Hixon argues that the circuit court erred in finding that a

special relationship existed between herself and Abigail.  For the following reasons, this Court

affirms in part and reverses in part.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

In 2020, Abigail was a 17-year-old "special needs" student at Jefferson Forest High School ("JFHS"). Abigail has Down syndrome, and, due to her intellectual disabilities and speech language impairments, she received special education services from Bedford County Public Schools. One of the special education services Abigail received was instruction in a "self-contained special education classroom." A self-contained special education classroom is "designed with low student-teacher ratios to provide enhanced support and supervision for students." These low student-teacher ratios are generally comprised of less than ten students and "at least one paraeducator supporting the classroom teacher."

Since Abigail began her education, she has had Individualized Education Plans ("IEPs"). Abigail's IEPs have indicated that she "has low cognitive and adaptive functioning" and that her "verbal communication is very limited." In addition, "Abigail required close supervision for safety."

C.D.,[1] another student at JFHS, also received special education services and had an IEP. C.D.'s IEP reflected the "need for direct supervision to monitor interactions with other students, particularly females," because of a criminal charge of sexual misconduct. The criminal charge was from an incident in 2017 where C.D. sexually assaulted another female student at one of Bedford County's public schools. C.D.'s teacher had left the classroom "for a period of two minutes" and C.D. "was found with his hand under a female student's shirt." C.D.'s IEP stated that he was assessed to be "a moderate risk for committing sexual re-offense" and to have a "dangerous level of impulsive behavior."

---

[1] We use initials, rather than names, because C.D. was a minor at the time of the filing of the lawsuit.

On March 11, 2020, Abigail and C.D. were in Ms. Musgrove's self-contained special education classroom, along with less than six other students. Hixon, a special education teacher at JFHS, and Ream, a substitute aide at JFHS, were the teachers in Musgrove's self-contained special education classroom.[2] The students were working on assignments. As a special education teacher and substitute special education teacher, Hixon and Ream were required to "know the contents of the students' IEPs."

Upon completing his assignment, C.D. asked Hixon if he could take his assignment materials to Hixon's classroom, which was empty at the time. Hixon permitted C.D. to return his assignment materials and gave him her classroom keys. C.D. then left Musgrove's classroom, taking Abigail with him. C.D. and Abigail left Musgrove's classroom together unnoticed by Hixon or Ream and without supervision. Following, C.D. and Abigail entered Hixon's classroom, and, because the classroom was self-locking, no one could enter the classroom without a key. While they were in the classroom alone together, C.D. sexually assaulted Abigail.

A little over seven minutes later, Hixon left Musgrove's classroom with another student to return some assignment materials to her classroom. Upon arriving at her classroom, Hixon was unable to enter because C.D. had the keys inside. Hearing Hixon attempt to open the door, C.D. instructed Abigail to open the door. Crying, Abigail opened the door; Hixon entered the classroom and told C.D., "This is not a good look because of what happened in the past." Abigail then "pulled her pants forward, indicating to Hixon that she had been touched by [C.D.]." C.D. and Abigail were sent back to Musgrove's classroom and Ream was informed of the sexual assault.

Thereafter, Hixon, the principal, and an assistant principal at JFHS interviewed C.D., who admitted to sexually assaulting Abigail and repeated Hixon's statement that "This is not a good look

---

[2] The record is unclear as to why Hixon was teaching in Musgrove's classroom instead of her own.

because of what happened in the past." Jacqueline (Abigail's mother), upon being informed of the sexual assault, took Abigail to Lynchburg General Hospital, where a forensic nurse confirmed that "Abigail suffered physical injuries consistent with sexual assault."

On March 11, 2022, the Egans sued several parties, including Hixon and Ream, for gross negligence. Hixon and Ream demurred. After a hearing in April 2023, the circuit court sustained Ream's demurrer, finding that the complaint failed to state sufficient facts for a claim of gross negligence.[3] The circuit court granted the Egans leave to amend; and they timely filed their amended complaint, this time pleading gross negligence and willful and wanton conduct. Again, Hixon and Ream filed demurrers on the grounds that the amended complaint lacked sufficient facts for claims of gross negligence and willful and wanton conduct. In March 2024, the circuit court held a hearing on Hixon's and Ream's demurrers to the amended complaint and sustained them, this time with prejudice. The circuit court found that although a special relationship existed between the teachers and Abigail, the complaint failed to allege facts of gross negligence or willful and wanton conduct. The Egans appeal.

ANALYSIS

*Standard of Review*

We review the circuit court's ruling on a demurrer de novo. *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 473 (2017). In reviewing a circuit court's decision on a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint" and interpret them "in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). We also accept any factual allegations that "fairly can be viewed as impliedly alleged or reasonably inferred from the facts [expressly] alleged." *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting

---

[3] Hixon's demurrer to the complaint was not heard and the record does not explain why.

- 4 -

*Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)).  "But we are not bound by the pleader's conclusions of law that are couched as facts."  *Wright v. Graves*, 78 Va. App. 777, 781 (2023).  We also "disregard allegations that 'are inherently impossible[] or contradicted by other facts pleaded' and reject 'inferences [that] are strained, forced, or contrary to reason.'"  *New Age Care, LLC v. Juran*, 71 Va. App. 407, 429 (2020) (second alteration in original) (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 330 & n.2 (2018)).  "Our recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process."  *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

### I.  Gross Negligence

Gross negligence "is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care."  *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018).  Accordingly, "[t]he standard for gross negligence [in Virginia] is one of indifference, not inadequacy."  *Patterson v. City of Danville*, 301 Va. 181, 198 (2022) (second alteration in original) (quoting *Elliott v. Carter*, 292 Va. 618, 622 (2016)).  As such, "a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care."  *Giddens*, 295 Va. at 614 (quoting *Elliott*, 292 Va. at 622).

Gross negligence "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness."  *Patterson*, 301 Va. at 198 (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004)).  "'Gross negligence' is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another."  *Id.* (quoting *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987)).  "Deliberate conduct is important evidence on the question of gross negligence."  *Giddens*, 295 Va. at 614 (quoting *Chapman v. City of Virginia Beach*, 252 Va. 186, 190 (1996)).

First, it is alleged that Abigail required close supervision for her safety and that C.D. required direct supervision to monitor his interactions with other students. The amended complaint specifically stated that "[C.D.]'s need for direct supervision to monitor interactions with other students . . . was documented in his IEP." Second, it is alleged that both Hixon and Ream were required to "know the contents of the students' IEPs." As such, it is alleged that Hixon and Ream knew that Abigail and C.D. required close and direct supervision, respectively. Third, C.D.'s history of sexually assaulting another student was documented in his IEP, which occurred when C.D. was in a classroom with no teachers present. Despite this knowledge, Hixon permitted C.D. to leave the classroom, with the keys to another classroom, unsupervised, and without any effort to account for the other students, including Abigail.[4] Notwithstanding the requirement for close and direct supervision, and the fact that they consisted of a quarter of the students in the classroom, Abigail and C.D. left the classroom, unnoticed by Hixon or Ream. Although Ream stepped outside of the classroom and glanced down the hall while Abigail and C.D. were absent from the classroom, the Egans allege that he failed to take any further action in locating the students. Considering all these facts as alleged in the amended complaint, we hold that the amended complaint sufficiently asserts "an utter disregard of prudence amounting to complete neglect of the safety of another." *Patterson*, 301 Va. at 198 (quoting *Frazier*, 234 Va. at 393).

Further, the amended complaint does not allege that Hixon or Ream exercised "slight diligence" or "scant care." *Giddens*, 295 Va. at 613. Notably, as alleged, neither Hixon nor Ream displayed any semblance of diligence or care until *after* the sexual assault had occurred, when Hixon sent Abigail and C.D. back to a supervised setting (but nevertheless still sending Abigail and

___

[4] It is alleged that neither Hixon nor Ream realized that Abigail was absent from Musgrove's classroom until she opened Hixon's classroom door for Hixon.

her assaulter there together) and reported the incident. However, by the time Hixon exhibited any semblance of care, she and Ream had already breached their duty of care.

Therefore, the amended complaint sufficiently pleaded claims of gross negligence against Hixon and Ream. Accordingly, the circuit court erred in sustaining the demurrers as to the gross negligence claim.

## II. Willful and Wanton Conduct

"[W]illful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Curtis v. Highfill*, 298 Va. 499, 505 (2020) (quoting *Infant C. v. Boy Scouts of Am., Inc.*, 239 Va. 572, 581 (1990)). "The hallmark of this species of tortious conduct is the defendant's consciousness of his act, his awareness of the dangers or probable consequences, and his reckless decision to proceed notwithstanding that awareness." *Id.* at 506 (quoting *Infant C.*, 239 Va. at 581). "Willful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted." *Id.* at 505-06 (quoting *Alfonso v. Robinson*, 257 Va. 540, 545 (1999)). "Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive." *Infant C.*, 239 Va. at 582 (quoting *Boward v. Leftwich*, 197 Va. 227, 231 (1955)).

The analysis here is similar to the above analysis for gross negligence, with the additional factor of a conscious awareness of the risk. The "actual or constructive consciousness of the danger involved" is that C.D. was at "moderate risk for committing sexual re-offense" and because of this, he required "direct supervision to monitor interactions with other students, particularly females."

As for Hixon, it is alleged that she gave C.D. the classroom keys to go drop off his assignment materials. However, it is not alleged, nor can it be reasonably inferred, that she instructed or allowed C.D. to take Abigail with him. Further, there are no allegations that Hixon should have been aware that C.D. would try and leave the classroom with Abigail or that Hixon was aware that her actions would result in C.D. being alone with Abigail. The facts pleaded simply do not support a claim for willful and wanton conduct. It cannot be said that, by giving C.D. the keys to drop his materials off in another classroom, Hixon acted in "conscious[ ] . . . disregard of [Abigail]'s rights" and that giving the keys to C.D. "probably would cause injury to [Abigail]." *Infant C.*, 293 Va. at 581.

As for Ream, although he did glance outside the classroom at one point, this action is insufficient to be acting in "conscious[ ] . . . disregard" or "acting with reckless indifference." *Id.* Instead, we find that Ream's actions, while indifferent, did not rise to the recklessness required for willful and wanton conduct.

Although Hixon and Ream acted with "heedlessness, inattention, [and] inadvertence[,]" we do not find that the facts as alleged rise to "willfulness and wantonness convey[ing] the idea of purpose or design, actual or constructive" as a matter of law. *Id.* at 582 (quoting *Boward*, 197 Va. at 231). Accordingly, the circuit court did not err in sustaining the demurrers as to the willful and wanton conduct claim.

### III. Leave to Amend

"Leave to amend should be liberally granted in furtherance of the ends of justice." Rule 1:8. "The decision whether to grant leave to amend a complaint rests within the sound discretion of the trial court." *Doe v. Baker*, 299 Va. 628, 656 (2021) (quoting *Kimble v. Carey*, 279 Va. 652, 662 (2010)). "On appeal, review of the trial court's decision to grant or deny a motion to amend is limited to the question whether the trial judge abused his discretion." *AGCS Marine*,

293 Va. at 487 (quoting *Lucas v. Woody*, 287 Va. 354, 363 (2014)). "After sustaining a demurrer, a court should grant a motion for leave to amend except when, for example, the proffered amendments are legally futile . . . [or] when there is no proffer or description of the new allegations . . . ." *Id.* Further, in the evaluation of the circuit court's exercise of discretion, "we consider, among other things, whether the court previously granted leave to amend." *Doe*, 299 Va. at 656. "It is true that amendments are not a matter of right, but a trial court's decision refusing leave to amend after a showing of good cause is, in ordinary circumstances, an abuse of discretion." *Ford Motor Co. v. Benitez*, 273 Va. 242, 252 (2007).

At the hearing on the demurrers, the Egans stated that "depositions did happen [a few days ago]" and, if the circuit court was inclined to rule against them, asked for leave to file a second amended complaint "given the evidence that's been discovered." However, the Egans failed to elaborate on what this new evidence was or otherwise proffer or describe any new allegations that would support a viable theory of recovery. Simply stating that evidence has been discovered, without a proffer or description of what the allegations are, falls short of a showing of good cause. In addition, the circuit court previously granted the Egans leave to amend.

Accordingly, this Court finds that the circuit court did not abuse its discretion in denying the Egans' request for leave to amend.

## IV. Special Relationship

As an initial matter, Ream also assigned error to the circuit court's finding that a special relationship existed between Abigail and himself; however, Ream has waived this argument by failing to include the standard of review, argument, or authorities relating to the cross-error in his brief. With respect to the assignment of cross-error, the brief of an appellee must contain the standard of review, the argument, and the authorities relating to each assignment of cross-error. *See* Rule 5A:21(e). "The Court will not consider [the] assignment of cross-error because of claimant's

- 9 -

failure to comply with Rule 5A:21." *Key Risk Ins. Co. v. Crews*, 60 Va. App. 335, 347 (2012). Accordingly, we only address Hixon's cross-error.

"As a general rule, there is no duty to warn or protect against acts of criminal assault by third parties. This is so because under 'ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen.'" *A.H.*, 297 Va. at 618 (quoting *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135 (2018)). "Indeed, 'in only rare circumstances has this Court determined that the duty to protect against harm from third party criminal acts exists.'" *Id.* (quoting *Terry*, 296 Va. at 135).

However, "[t]wo such rare circumstances exist that constitute exceptions to this general rule of non-liability." *Id.* at 619. In one of these circumstances, "[t]he common law recognizes a duty to protect when a special relationship exists '(1) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff which gives a right to protection to the plaintiff.'" *Id.* (quoting *Brown v. Jacobs*, 289 Va. 209, 215 (2015)).

Under Virginia law, "a special relationship exists between a vulnerable individual in a custodial relationship and his or her custodian." *Id.* at 622. "That relationship, if proven, imposes a duty of reasonable care upon the custodian to protect the vulnerable individual in his custody." *Id.*

> One who is required by law or who voluntarily takes the custody of another under circumstances such as . . . to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor
>
> > (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and
> > (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 320. *See also A.H.*, 297 Va. at 623. "The circumstances under which the custody of another is taken and maintained may be such as to . . . deprive him of the protection of someone who, if present, would be under a duty to protect him . . . ." Restatement (Second) of Torts § 320 cmt. b. For example, "a child while in school is deprived of the protection of his parents or guardian." *Id.* "Therefore, the actor who takes custody of . . . a child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him." *Id.*

For purposes of demurrer review, we find as a matter of law, that the allegations in the amended complaint are sufficient to permit Abigail to fall within the limited exception to the general rule of non-liability as a vulnerable individual in a custodial relationship with Hixon. The Egans' amended complaint contained allegations which, if proven, would establish the existence of a special relationship between her and Hixon and, thus, would give rise to a duty to protect her from third persons. For example, the Egans' alleged that Hixon was aware that Abigail: (1) had Down syndrome, (2) had low cognitive and adaptive functioning, comparable to that of a four year old, (3) required complete dependence on others for all aspects of her life, and (4) required close supervision for safety at school. Further, the Egans alleged that C.D., who was in the self-contained classroom with Abigail, had a history of sexually assaulting a female classmate and he had a risk of sexual re-offense; and it was alleged that Hixon was aware of these facts.

In *A.H.*, our Supreme Court found that the allegation that the defendants had "custody of the minor plaintiff and subjected her to an association with . . . a person likely to harm her and therefore owed a duty to exercise reasonable care to plaintiff to prevent her from being exposed to an unreasonable risk of harm" was "sufficient to state a claim for negligence based upon a special-relationship duty." *A.H.*, 297 Va. at 624, 626. Likewise, we find that Hixon had custody of Abigail, that Abigail was subjected to C.D., a classmate and "person likely to harm her," and, therefore,

- 11 -

Hixon owed a duty to exercise reasonable care to Abigail to prevent her from being exposed to unreasonable risk of harm.

This Court is of the opinion, given the specific facts and unique circumstances of Abigail's vulnerabilities and C.D.'s risk of sexual re-offense, combined with Hixon's knowledge of such, that the amended complaint sufficiently stated a special relationship duty of Hixon to protect Abigail from sexual assault by C.D., while they were in her custody. In addition, we note that this is one of the narrow exceptions to the general rule of non-liability, and "the application of th[ese] exceptions 'is always fact specific and, thus, not amenable to a bright-line rule for resolution.'" *Commonwealth v. Peterson*, 286 Va. 349, 356 (2013) (quoting *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 322 (2006)).

Accordingly, the circuit court did not err in ruling that a special relationship existed between Abigail and Hixon.

## CONCLUSION

For the reasons stated, we affirm the circuit court's rulings as to willful and wanton conduct, the denial of leave to amend, and the finding of a special relationship between Abigail and Hixon and Ream. But we reverse the circuit court's ruling as to gross negligence and remand the case for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*