COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Chaney and Lorish
Argued at Richmond, Virginia

GABRIELLE BRADFORD

MEMORANDUM OPINION[*] BY
v.        Record No. 0386-22-2          JUDGE LISA M. LORISH
MARCH 14, 2023

JARED CRAIN

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

Andrew T. Bodoh (Thomas H. Roberts & Associates, P.C., on
briefs), for appellant.

David P. Corrigan (M. Scott Fisher, Jr.; Harman, Claytor,
Corrigan & Wellman, on brief), for appellee.

Several police officers arrived at the home of Gabrielle Bradford, appellant, to execute an

arrest warrant for Ajay Ayseli.  The police believed Ayseli, wanted for felony carjacking, would be

at Bradford's home to visit his and Bradford's son.  Things went awry quickly.  In the span of a few

minutes, Ayseli barred himself inside the house, held Bradford hostage, and stabbed her more than

thirty times.  Officers shot Ayseli through a glass door during the attack, ultimately killing him and

inadvertently shooting Bradford in the process.  Less than a minute before Ayseli began stabbing

Bradford, Officer Jared Crain, appellee, yelled at her to "Get him out, right now" and to "Open that

door!  Now!"  Bradford alleges that these commands created a special relationship requiring Crain

to protect her from Ayseli and that he was grossly negligent in failing to do so.  Assuming a special

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

relationship existed, the allegations in the amended complaint preclude a finding of gross negligence on Crain's part, so we affirm the trial court's decision to grant the demurrer.

## BACKGROUND

We consider the facts as stated in the amended complaint, "along with those reasonably and fairly implied from them, in the light most favorable to the plaintiff." *Doe v. Zwelling*, 270 Va. 594, 597 (2005). "Our recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

Believing Ayseli may be present at Bradford's home to visit his and Bradford's son, five police officers—including Crain, a City of Richmond officer—came to that house to execute a warrant for Ayseli's arrest. The warrant was for a felony carjacking that took place roughly one week earlier. While Crain knew Ayseli was wanted by the police and was believed to have brandished a knife during the carjacking, Bradford knew nothing about the outstanding warrant. Crain also knew, or should have known, that Ayseli had a history of domestic violence.

When the officers arrived, Ayseli was in the driveway of Bradford's house but then immediately fled inside. The officers rushed toward the house. Ayseli physically resisted as they tried to push into the house through the front door. Bradford, who was next to Ayseli behind the front door, "insisted that [Ayseli] cease his resistance, and either allow the officers inside, or otherwise meet with the officers outside." She sent her son upstairs and attempted to physically force Ayseli to open the door.

Crain shouted to the other officers, "Go around back, get around back!" He led two officers to the backyard, then quickly returned to the front yard. From that vantage point, he saw Bradford through a window and yelled at her, "Get him out, right now!" Four seconds later, he again yelled at Bradford, "Open that door! Now!" When Crain issued his orders to Bradford, he

did not know whether Ayseli was armed, nor did he know if any officers could protect Bradford and her son.

Bradford understood Crain's commands as a directive to her to assist the officers with seizing Ayseli. Thus, rather than seeking safety, Bradford tried to tell the police to come around to the back door of the residence, where she planned to open the door for them.

Three seconds after telling Bradford, "Open that door! Now!," Crain saw Ayseli through the window and pointed his gun at him, yelling, "Show me your hands! Now!" Eight seconds later, Crain saw Ayseli grab Bradford by the back of her hair and pull her further into the house. Crain yelled to the other officers, "He's got her hostage! He's holding her!" He reiterated, "He's holding her hostage" a few seconds later.

Six seconds after that—in total, 26 seconds after Crain's first command to Bradford—officers heard Bradford's screams and saw Ayseli "viciously attacking" her with a knife. The two officers behind the house tried to enter but could not break down the glass back door. They then began shooting at Ayseli to stop the attack. One of the rounds struck Bradford, and the others struck and killed Ayseli. The officers in front of the house (including Crain) successfully broke down the front door "about twenty-five seconds after Crain's call of 'He's got her hostage! He's holding her!'" Bradford, suffering from more than 30 stab wounds as well as the gunshot wound, was taken to the hospital in critical condition but survived.

Bradford filed a gross negligence claim against Crain. Her amended complaint alleged that Crain's "directives created a special relationship between Crain and Ms. Bradford that gave Ms. Bradford the right to Crain's protection, or the protection of his fellow officers in his stead, as she worked to comply with his directive." She also argued that "[a] reasonable officer in Crain's position would have been aware that . . . attempting to engage Ms. Bradford, likely within Mr. Ayseli's hearing, to cooperate further in the efforts to arrest Mr. Ayseli, would put her

at increased risk of injury or death at the hands of Mr. Ayseli." Crain filed a demurrer to the amended complaint, arguing that 1) Bradford failed to establish a special relationship, 2) Ayseli's criminal acts were not reasonably foreseeable to Crain, and 3) the facts alleged failed to give rise to gross negligence because Crain exercised some degree of care.

The trial court sustained the demurrer, concluding that no special relationship existed and that, as a result, the amended complaint failed to state a claim for gross negligence. The court also denied Bradford's request to file a second amended complaint. Bradford appeals.

## ANALYSIS

A demurrer is a form of pleading that "tests the legal sufficiency of the facts properly alleged [in a complaint], and the inferences fairly drawn therefrom." *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135 (2018). We review "a circuit court's decision sustaining a demurrer de novo." *Ayers v. Brooke Rd., LLC*, 300 Va. 315, 321 (2021). We "accept as true all factual allegations in the complaint" as well as "unstated inferences to the extent that they are *reasonable*." *Patterson v. City of Danville*, __ Va. __, __ (July 7, 2022) (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)). "[W]e give them no weight to the extent that they are *unreasonable*," nor do we "accept the veracity of conclusions of law camouflaged as factual allegations or inferences." *Id.* (quoting *Doe ex rel. Doe*, 299 Va. at 641). "'[W]hether a legal duty in tort exists is a pure question of law' to be reviewed de novo." *Shoemaker v. Funkhouser*, 299 Va. 471, 478 (2021) (alteration in original) (quoting *Burns v. Gagnon*, 283 Va. 657, 668 (2012)).

"To plead a cause of action for negligence, a plaintiff must allege a legal duty, a violation of that duty and resulting damage." *Terry*, 296 Va. at 135. Bradford alleges that Crain had a duty to protect her from Ayseli's criminal assault and her resulting injuries.

A.

"As a general rule, there is no duty to warn or protect against acts of criminal assault by third parties" because such an assault is usually not reasonably foreseeable. *Id.* There are two exceptions "to this general rule of non-liability." *A.H.*, 297 Va. at 619. The first is when a defendant "expressly assumes a duty to protect another from criminal harm." *Id.* The second— relied upon by Bradford—is for "dut[ies] not assumed but imposed" based on the existence of a special relationship. *Id.*

Virginia recognizes a common law duty to warn of or protect someone from harm by a third person when a special relationship exists "(1) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff which gives a right to protection to the plaintiff." *Id.* (quoting *Brown v. Jacobs*, 289 Va. 209, 215 (2015)). "The necessary special relationship may be one that has been recognized as a matter of law, . . . or it may arise from the factual circumstances of a particular case."[1] *Brown*, 289 Va. at 215 (quoting *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 107 (2001)).

Bradford argues that a law enforcement officer can have a special relationship with a person that creates a duty to protect that person from harm by a third party. Because we have not recognized a special relationship as a matter of law between law enforcement officers and citizens, she argues such a duty was created here based on the particular factual circumstances pleaded in her amended complaint, citing *Burdette v. Marks*, 244 Va. 309 (1992).

The mere existence of a special relationship, however, is not enough. A duty of care arises only where the "particular circumstances of that special relationship" make the danger of

---

[1] The categories of special relationships recognized in Virginia as a matter of law include "common carrier/passenger; innkeeper/guest; employer/employee; business owner/invitee; and hospital/patient." *Brown*, 289 Va. at 215.

harm from a third party foreseeable. *Yuzefovsky*, 261 Va. at 107. Certain special relationships—innkeeper-guest, employer-employee, common carrier-passenger—require only that the "danger of a third party criminal act is *known or reasonably foreseeable*." *Terry*, 296 Va. at 136 n.3 (emphasis added). Other relationships—business owner-invitee, landlord-tenant—"impose a duty to warn of third party criminal acts only when there was an *imminent probability* of injury from a third party act." *Id.* (emphasis added).

The trial court found Bradford failed to allege a special relationship doctrine theory of liability in her amended complaint, relying on the fact that Crain was "not responding to a service call or any cry for help from the Plaintiff" and was present solely to serve "an outstanding warrant on Ayesli." In this way, the court determined this case was distinguishable from *Burdette*, where the officer responded to render assistance after a motor vehicle accident. The court also observed that Bradford "does not fall under any category of recognized special relationships such as employer-employee and business owner and invitee."

Bradford contends that the trial court erred and the special relationship was created when Crain gave her orders to assist in the arrest, telling her, "Get him out, right now!" and, "Open that door! Now!" and thereby "deputizing" her. Bradford argues she had to assist Crain rather than seek safety because Code § 18.2-463 makes it a criminal offense to "refuse or neglect to assist" a law enforcement officer after such a demand.

We observe that other states have established specific tests for when a special relationship exists between a police officer and a victim and that those tests often rely, in part, on the officer's assumption of a duty to protect.[2] The Nebraska Supreme Court agrees that a special

---

[2] *See, e.g.*, *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1085 (Md. 1986) ("In order for a special relationship between police officer and victim to be found, it must be shown that the local government or the police officer affirmatively acted to protect the specific victim . . . , thereby inducing the victim's reliance upon the police protection."); *Melendez v. City of*

- 6 -

relationship between officers and citizens exists "where the police have expressly promised to protect specific individuals from precise harm," and also categorically finds such a relationship "where individuals who have aided law enforcement as informers or witnesses are to be protected." *Bartunek v. State*, 666 N.W.2d 435, 440 (Neb. 2003) (quoting *Brandon v. Cnty. of Richardson*, 566 N.W.2d 776, 780 (Neb. 1997)). With respect to this latter category, "a special relationship undoubtedly exists where an individual assists law enforcement officials in the performance of their duties." *Id.* (quoting *Brandon*, 566 N.W.2d at 780).

Because we conclude below that Bradford failed to adequately allege gross negligence, we will assume without deciding that she sufficiently pled the existence of a special relationship based on Crain's directive to assist him in the arrest, that this relationship created a duty to protect Bradford from reasonably foreseeable criminal acts, and that Ayseli's resort to violence was reasonably foreseeable to Crain.[3]

B.

Putting aside the question of duty, a plaintiff must allege gross negligence to overcome sovereign immunity when suing a public official acting in their official capacity. *See Cromartie*

---

*Philadelphia*, 466 A.2d 1060, 1064 (Pa. 1983) ("[T]he individual claiming a 'special relationship' must demonstrate that the police were: 1) aware of the *individual's* particular situation or unique status, 2) had knowledge of the potential for the particular harm which the *individual* suffered, and 3) voluntarily assumed, in light of that knowledge, to protect the *individual* from the precise harm which was occasioned."); *Cuffy v. City of New York*, 505 N.E.2d 937, 940 (N.Y. 1987) (requiring "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the [officer] that inaction could lead to harm; (3) some form of direct contact between the [officer] and the injured party; and (4) that party's justifiable reliance on the [officer's] affirmative undertaking"). The New York test has been adopted by at least Ohio, Georgia, and Michigan.

[3] The doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available." *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010) (quoting *Air Courier Conf. v. Am. Postal Workers Union*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)).

*v. Billings*, 298 Va. 284, 297 (2020). Gross negligence "requires a degree of negligence that would shock fair-minded persons." *Elliott v. Carter*, 292 Va. 618, 622 (2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004)). By definition, it is "the absence of slight diligence or the want of even scant care." *Cromartie*, 298 Va. at 297. "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury." *Burns v. Gagnon*, 283 Va. 657, 678 (2012).

But "[b]ecause 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott*, 292 Va. at 622 (second alteration in original) (quoting *Kuykendall v. Young Life*, 261 Fed. Appx. 480, 491 (4th Cir. 2008)); *see also Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987) ("when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule").

The Supreme Court recently affirmed the grant of a demurrer after finding gross negligence was insufficiently pled. *Patterson*, __ Va. at __. There, the complaint alleged that a doctor for a jail failed to properly diagnose and treat the decedent, but also listed several tests and treatments the doctor had performed. *Id.* at __. The Court found that the doctor's "multiple efforts to treat [the decedent]—whether or not negligently performed—demonstrate that [the doctor] was exercising 'some degree of care' in his capacity as a physician, and thus, 'the claim for gross negligence must fail as a matter of law.'" *Id.* at __ (quoting *Elliott*, 292 Va. at 622). Likewise, in *Elliott*, the undisputed evidence that the defendant "attempt[ed] to render assistance" to the drowning child was dispositive. 292 Va. at 623.

We have assumed, for the purpose of argument, that Crain incurred a duty to protect Bradford when he ordered her to assist law enforcement in getting Ayseli out of the house and

that his knowledge of Ayseli's violent history made the risk of injury to Bradford reasonably foreseeable. By the time Crain issued the directive to Bradford, Crain had ordered other officers to "Go around back, get around back," leading those officers "through a gate into the back yard, putting themselves in view of the rear door." It was after this that Crain returned to the front yard, saw Bradford through the window, and "yelled at her, 'Get him out, right now!'" Four seconds later, he yelled again, "Open that door! Now!" Three seconds after that, Crain pointed his gun at Ayseli through the window, yelling, "Show me your hands! Now!" And only "[e]leven seconds" after his last directive to Bradford, Crain saw Ayseli "grab Bradford by the back of the hair and pull her deeper into the house." He immediately yelled to the other officers, "He's got her hostage! He's holding her," which he repeated five seconds later.

Bradford alleges that it was 26 seconds after Crain commanded her to participate in the arrest of Ayseli that she was "heard screaming from the house" and "officers attempted to force entry." The two officers in the backyard came "up onto the porch when Crain called out about the hostage situation" and tried unsuccessfully to "break through the glass" before they "fired two rounds" to "try to stop the attack." Ultimately, they "pushed through the remaining glass and fired additional rounds." While this was going on, Crain and another officer tried "to break open the front door."

Considering the facts alleged in the complaint, Crain plainly took some level of care to protect Bradford and as a matter of law cannot be said to have been indifferent to her safety.[4] As soon as Ayseli entered the house, Crain sent officers around the back of the house, a vantage point from which those officers managed to witness Ayseli's attack and perhaps ultimately save Bradford's life by shooting and killing Ayseli. Crain personally attempted to subdue Ayseli

---

[4] The amended complaint does not specify what actions Crain should have taken to protect Bradford other than not issuing the directive to her in the first place.

before he could cause injury by pointing his gun at him through the open window. And he tried to break down the front door to rescue Bradford once Ayseli's attack began. Where there is evidence of "some degree of care," the "claim for gross negligence must fail as a matter of law," even if a defendant's "efforts may have been inadequate or ineffectual." *Elliott*, 292 Va. at 622-23; *see also Patterson*, __ Va. at __.[5] For this reason, the trial court was correct in concluding that the complaint failed to state a claim of gross negligence.[6]

## C.

Bradford also assigned error to the court's decision to reject her second amended complaint. "The decision whether to grant leave to amend a complaint rests within the sound discretion of the trial court." *Kimble v. Carey*, 279 Va. 652, 662 (2010). Our Supreme Court "has affirmed the circuit court's discretion to dismiss [a] claim with prejudice when amendment or reconsideration 'would accomplish nothing more than provide an opportunity for reargument of the question already decided.'" *Primov v. Serco, Inc.*, 296 Va. 59, 70 (2018) (quoting *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 403 (1985)).

---

[5] Under a "special relationship" theory of liability, Bradford's duty of care was ongoing after it was created. Therefore we disagree with our dissenting colleague's conclusion that the actions taken by Bradford and his fellow officers after the directive was issued are irrelevant. Section 437 from the Restatement (Second) of Torts addresses *causation*, not the applicable degree of negligence, and thus, it would only be relevant if the amended complaint had adequately alleged a claim for gross negligence.

[6] The trial court found that Bradford failed to state a claim for gross negligence because she did not establish that Crain had a special relationship duty to protect her, and thus could not satisfy the duty element of her negligence claim. Crain alternatively argued in his demurrer that Bradford failed to plead gross negligence. In deciding this appeal on Bradford's failure to plead the applicable *degree* of negligence, we follow the long-standing principle that "we are not 'limited to the grounds offered by the trial court in support of its decision[;]' rather, we are 'entitled to affirm the court's judgment on alternate grounds, *if such grounds are apparent from the record*.'" *Taylor v. Northam*, 300 Va. 230, 251 (2021) (alteration in original) (quoting *Perry v. Commonwealth*, 280 Va. 572, 582 (2010)).

Bradford argues that the proposed second amended complaint would address "what Officer Crain knew at the time and how he knew it" and bolster the "analysis of the degree of danger that existed for Ms. Bradford before Officer Crain's directives." None of the proposed amendments or attachments to the complaint diminish or change the existing complaint's allegations of slight care. Thus, "the proffered amendments are legally futile," *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 497 (2017), and any error in the court's decision to deny the motion to amend is harmless, s*ee* Code § 8.01-678.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*

Chaney, J., dissenting.

The circuit court erred in sustaining Crain's demurrer to Bradford's amended complaint because—on demurrer—Bradford stated a claim of gross negligence under a special relationship theory of liability. The circuit court also erred in dismissing Bradford's suit with prejudice and denying Bradford's motion for leave to amend her amended complaint with her proffered second amended complaint. Because I disagree with the majority's opinion affirming the circuit court's orders (i) sustaining Crain's demurrer, (ii) rejecting Bradford's second amended complaint, and (iii) dismissing Bradford's suit with prejudice, I respectfully dissent.

I. THE CIRCUIT COURT ERRONEOUSLY SUSTAINED CRAIN'S DEMURRER

*A. Standard of Review*

"Because this case was decided on demurrer, we take as true all material facts properly pleaded in the motion for judgment and all inferences properly drawn from those facts." *See Koffman v. Garnett*, 265 Va. 12, 14 (2003) (citing *Burns v. Bd. of Supervisors of Fairfax Cnty.*, 218 Va. 625, 627 (1977)). This Court also considers documents attached to and incorporated into the complaint to amplify the factual allegations. *See Hale v. Town of Warrenton*, 293 Va. 366, 366 (2017) (quoting *EMAC, L.L.C. v. County of Hanover*, 291 Va. 13, 21 (2016)). "No grounds other than those stated specifically in the demurrer shall be considered by the court." Code § 8.01-273. "On appeal, a plaintiff attacking a trial court's judgment sustaining a demurrer need show only that the court erred, not that the plaintiff would have prevailed on the merits of the case." *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006) (citing *Thompson v. Skate Am., Inc.*, 261 Va. 121, 128 (2001)).

### B. Crain's Alleged Special Relationship with Bradford

The circuit court granted Crain's demurrer upon finding that Bradford's amended complaint failed to allege a special relationship theory of liability. The circuit court concluded that the existence of a special relationship was not sufficiently pleaded because Bradford's amended complaint alleged that Crain was present only to serve an arrest warrant on Ayseli and the amended complaint does not allege that Crain was responding to a service call or any cry for help from Bradford. The majority's opinion assumes without deciding that Bradford's amended complaint sufficiently pleaded the existence of a special relationship, and the majority affirms the circuit court's order sustaining Crain's demurrer based on the majority's conclusion that Bradford failed to sufficiently plead gross negligence. I would hold that Bradford sufficiently pleaded the existence of a special relationship between Crain and Bradford. As explained below, I disagree with the majority's conclusion that the circuit court's order sustaining the demurrer can be affirmed on the alternative ground that Bradford did not sufficiently plead gross negligence.

Taking the allegations in the amended complaint as true and considering the allegations in aid of the pleading, Crain created a special relationship with Bradford when he commanded her to assist the police in arresting Ayseli. At the point when Crain essentially deputized Bradford, Crain had a duty of care towards Bradford. Crain's affirmative act commanding that Bradford assist in the arrest—together with the foreseeability that his commands would put Bradford in harm's way—created a factual circumstance that supports the asserted special relationship and Crain's consequent duty to protect Bradford. *See Burdette v. Marks*, 244 Va. 309, 312 (1992) (recognizing that whether a special relationship between an officer and an individual exists depends on whether the officer reasonably could have foreseen that he would be expected to take affirmative action to protect the individual from harm). As the majority acknowledges, "a special relationship undoubtedly exists where an individual assists law enforcement officials in the performance of their duties."

*Bartunek v. State*, 666 N.W.2d 435, 440 (Neb. 2003) (quoting *Brandon v. Cnty. of Richardson*, 566 N.W.2d 776, 780 (Neb. 1997)).

### C. Crain's Alleged Gross Negligence

I would also hold that Bradford sufficiently alleged that Crain breached his duty to protect her and that Crain acted with gross negligence when he deputized Bradford to assist police with the apprehension of Ayseli. "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of . . . a third person which is intended to cause harm, even though such conduct is criminal." Restatement (Second) of Torts § 302B (1965). "[G]ross negligence [is] 'that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded [people] although something less than willful recklessness.'" *Koffman*, 265 Va. at 15 (third and fourth alterations in original) (quoting *Ferguson v. Ferguson*, 212 Va. 86, 92 (1971)). "Gross negligence [is] 'a heedless and palpable violation of legal duty respecting the rights of others which amounts to the *absence of slight diligence*, or the *want of even scant care*.'" *Patterson v. City of Danville*, __ Va. __, __ (July 7, 2022) (quoting *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018)). "Whether certain actions constitute gross negligence is generally a factual matter for resolution by the jury and becomes a question of law only when reasonable people cannot differ." *Koffman*, 265 Va. at 15 (citing *Griffin v. Shively*, 227 Va. 317, 320 (1984)).

Taking all of the alleged facts in Bradford's amended complaint as true, and granting Bradford all reasonable inferences from those facts, Bradford has sufficiently shown that Crain acted with gross negligence. As alleged in Bradford's amended complaint, paragraph seven, when attempting to apprehend Ayseli, Crain knew that (1) Ayseli was wanted for a recent felony carjacking, (2) Ayseli was believed to have brandished a knife in the carjacking, and (3) Ayseli had

- 14 -

a history of domestic violence. As further alleged in paragraph 31, Crain knew that Ayseli had previously used physical force to prevent the officers from entering Ms. Bradford's residence. As alleged in paragraph 34, when Crain commanded Bradford to assist in Ayseli's arrest, he knew that he and other police officers were not in position to protect Bradford from the foreseeable result that Ayseli would harm Bradford in violently opposing her efforts to help the police. As further alleged in paragraph 31(f), when Crain loudly called for other officers to go to the back of the house, he knew that Ayseli would recognize that he had no avenue of escape. As alleged in paragraph 34, at the point when Crain commanded Bradford to "Get him out, right now" and to "Open that door! Now!," Crain was driven by his zealous desire to execute a standing arrest warrant. As further alleged in paragraphs 32 and 34, Crain disregarded the high likelihood that Ayseli would harm Bradford when she complied with Crain's commands and thereby—from Ayseli's perspective— was acting at the direction of police. A reasonable inference from the foregoing allegations is that Crain knew that Ayseli would harm Bradford for assisting the police because Ayseli had previously used force to repel the police's attempt to execute the arrest warrant. Thus, the admitted factual allegations in Bradford's amended complaint and the reasonable inferences from those allegations prove that Crain's command to Bradford to assist the police was driven by Crain's zealous desire to execute an arrest warrant against Ayseli and was issued without any regard for Bradford's safety, without exercising even slight care for Bradford. Crain's utter disregard for Bradford's safety constitutes gross negligence. Crain's gross negligence proximately caused Bradford's horrific injuries by inducing Ayseli to brutally attack her.

That Ayseli's attack on Bradford constituted criminal misconduct does not diminish Crain's culpability in view of Crain's alleged knowledge of Ayseli's recent violent behavior. *See* Restatement (Second) of Torts § 302B, cmt. e (1965). As stated in the Restatement (Second) of Torts § 302B, comment e:

> [An] actor . . . is required to anticipate and guard against the . . . criminal misconduct of others . . . where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account.

Knowing the resulting high degree of risk of harm to Bradford, and knowing that under the circumstances he could not guard against Ayseli's violent response, Crain was required to refrain from commanding Bradford to act as an agent of the police by assisting police with Ayseli's arrest.

Contrary to the majority's opinion, the factual allegations in Bradford's amended complaint—considered in aid of the pleading—do not allege that Crain exercised some degree of care when he commanded Bradford to help the police arrest Ayseli, a known violent fugitive.[7] The majority opines that the amended complaint's allegations that Crain tried to subdue Ayseli and rescue Bradford *after the attack began* show that Crain exercised at least slight care. But the relevant question is whether the amended complaint alleges that Bradford exercised some degree of care at the point when his duty of care was allegedly breached, i.e., at the point when he commanded Bradford to assist the police in arresting Ayseli. There are no factual allegations in the amended complaint that show Crain's exercise of *any* care towards Bradford at the point when he allegedly breached his duty of care. *See* Restatement (Second) of Torts, *supra*, § 437. As stated in the Restatement (Second) of Torts § 437:

> If the actor's negligent conduct is a substantial factor in bringing about harm to another, the fact that after the risk has been created by his negligence the actor has exercised reasonable care to prevent it

---

[7] The majority observes that Bradford's amended complaint does not allege what actions Crain should have taken other than not issuing the command to Bradford that made her an agent of the police. But Bradford was under no obligation to plead a standard of care for Crain. On demurrer, Bradford satisfied her obligation to plead gross negligence by alleging that Crain— without any care for the increased risk of harm to her that would foreseeably result—commanded Bradford's assistance under circumstances that proximately caused her harm. *See Koffman*, 265 Va. at 16 (reversing trial court decision to sustain a demurrer on gross negligence where complaint alleged that imprudent actions taken in utter disregard for the victim's safety raised a factual question on which reasonable persons could disagree).

> from taking effect in harm does not prevent him from being liable for the harm.

The officers' subsequent efforts to terminate Ayseli's horrific attack on Bradford do not prevent Crain from being liable from having brought about the attack.[8]

The majority further opines that Crain also exercised some care towards Bradford when he directed other officers to go around to the back of the house, in view of the rear door. But the amended complaint alleges that Crain issued this directive in an effort to arrest Ayseli, with no regard for Bradford's safety. The officers surrounding the house were alleged to be posted at a safe distance in order to prevent Ayseli's escape. No allegations or inferences therefrom support a finding that the police were posted to assist Bradford. Crain's directive that officers surround the house was alleged to serve Crain's purpose of apprehending Ayseli, not to protect Bradford. On demurrer, this Court cannot supply a *conflicting* inference that Crain ordered police to surround the house as an exercise of care for Bradford. Moreover, Crain's purported intent to exercise some slight degree of care for Bradford when he directed officers to surround the house is neither alleged by Bradford nor inferable from Bradford's other allegations. The mere presence of police around Bradford's house does not imply the exercise of slight care and making such an inference would absurdly defeat allegations of gross negligence against police in all cases. *See Green v. Ingram*, 269 Va. 281, 293 (2005) (holding that trial court erred in striking allegations of gross negligence against a police officer). Thus, taking the allegations in the amended complaint as true and considering the allegations in aid of the pleading, Crain simultaneously (i) created a special relationship with

---

[8] The majority notes that Crain had a continuing duty to mitigate harm to Bradford after issuing the deputizing command that proximately caused Ayseli to harm Bradford. Even if Crain were to satisfy this *continuing duty* of care by subsequent efforts to protect Bradford, those subsequent efforts do not negate Crain's liability for the *utter lack of care* exercised when Crain commanded Bradford to assist in Crain's effort to arrest Ayseli.

Bradford and (ii) breached the consequent duty of care towards Bradford with gross negligence by completely neglecting Bradford's safety at the point when he deputized her.

The cases cited by the majority do not support the majority's conclusion that gross negligence was insufficiently pleaded in Bradford's amended complaint. In *Patterson*, the personal representative of Patterson's estate sued the physician who treated Patterson while he was an inmate in the Danville Adult Detention Center. __ Va. at __. The complaint alleged facts proving that the doctor had made extensive efforts to diagnose and treat Patterson, but because the doctor had failed to diagnose and treat the illness that resulted in Patterson's death, the complaint further alleged that the doctor "was grossly negligent by failing to properly diagnose and treat Patterson." *Id.* at __. Our Supreme Court affirmed the circuit court's holding that the complaint filed by Patterson's estate failed to state a prima facie case of gross negligence. *Patterson* stands for the proposition that, as a matter of law, a doctor's alleged negligence *in the course of caring* for a patient is not gross negligence. The holding in *Patterson* is inapposite here because Bradford does not allege that Crain was negligent in the course of caring for Bradford. Rather, Bradford alleges that Crain was grossly negligent when he simultaneously created and breached a duty of care towards Bradford by deputizing her while completely neglecting her safety.

In *Elliott v. Carter*, 292 Va. 618, 621 (2016), another case cited by the majority, our Supreme Court affirmed the circuit court's order granting summary judgment in a wrongful death suit that alleged gross negligence by Trevor Carter, the Boy Scout peer leader of Caleb Smith's troop, after Caleb drowned on a Scout camping trip. In *Elliott*, the evidence showed that Carter, in the course of supervising and caring for Caleb, was aware that Caleb could not swim but permitted Caleb to walk on a sandbank surrounded by water. *See id.* at 620. When Caleb accidentally fell off the sandbank into the water, Carter tried, but failed to save Caleb. *Id.* at

620-21.  The Supreme Court held that because "the undisputed material facts support the conclusion that Carter exercised *some degree of care* in supervising Caleb[,] his conduct did not constitute gross negligence."  *Id*. at 623.  The holding in *Elliott* is also inapposite here because, like *Patterson*, *Elliott* stands for the proposition that a complaint that alleges negligence *in the course of providing care* fails to state a case of gross negligence.  Bradford's amended complaint does not allege that Crain was negligent in the course of caring for Bradford.  Bradford alleges that Crain, in the course of zealously attempting to arrest Ayseli, gave no consideration whatsoever to Bradford's safety when he deputized her while in no position to protect her from Ayseli's foreseeable violent response.

## II. THE CIRCUIT COURT ERRED IN REJECTING BRADFORD'S SECOND AMENDED COMPLAINT AND DISMISSING BRADFORD'S CASE WITH PREJUDICE

The circuit court abused its discretion by dismissing Bradford's suit with prejudice and denying Bradford's motion for leave to amend her amended complaint with the proffered second amended complaint.  "On appeal, review of the trial court's decision to grant or deny a motion to amend is limited to the question whether the trial judge abused his discretion."  *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 487 (2017) (quoting *Lucas v. Woody*, 287 Va. 354, 363 (2014) (citation omitted)).  As explained in *AGCS Marine Ins. Co.*:

> After sustaining a demurrer, a court should grant a motion for leave to amend except when, for example, the proffered amendments are legally futile, when the amendment is untimely under an order granting leave to amend by a certain deadline or fails to satisfy other conditions in the scheduling order, when there is no proffer or description of the new allegations, when amendment would be unduly prejudicial to the responding party, or when the amending party has engaged in improper litigation tactics.

*Id*. (citing Rule 1:8; *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295-96 (1996) (relying primarily on the lack of prejudice to find that the trial court abused its discretion in denying leave to amend where proffered amendments were not legally futile)).

The majority opines that Bradford's second amended complaint is legally futile because, according to the majority, none of the proposed amendments or attachments diminish or change the existing complaint's allegations that Crain exercised slight care when he ordered Bradford to assist the police efforts to apprehend Ayseli. However, as explained above, the alleged facts relied on by the majority fail to prove, on demurrer, that Crain exercised even slight care. Also, Bradford's second amended complaint alleges sufficient facts to prove that a special relationship had formed between Crain and Bradford when Crain commanded Bradford to assist police in apprehending Ayseli. Bradford's second amended complaint also alleges facts sufficient to show that Crain's command to Bradford to aid the police in apprehending Ayseli foreseeably and proximately caused harm to Bradford. Consequently, Bradford's motion for leave to amend the first amended complaint with the second amended complaint was not legally futile.

Crain would not have been prejudiced by the second amended complaint because the allegations in the second amended complaint merely reiterate the allegations in the amended complaint supplemented with additional supporting facts. Thus, the second amended complaint imposes no defensive burdens on Crain that were not already imposed by the amended complaint. Additionally, because the amended complaint resulted from merely revising the original complaint to expressly identify Crain as the officer who issued the deputizing directive to Bradford, the second amended complaint is the first substantial amendment. Given the absence of legal futility or prejudice to Bradford, the circuit court abused its discretion in denying Bradford leave to file the second amended complaint. *See AGCS Marine Ins. Co.*, 293 Va. at 487 (trial court abused its discretion in denying the motion for leave to amend where the allegations and reasonable inferences from them support a viable theory of recovery); Rule 1:8 (leave to amend should be liberally granted in furtherance of the ends of justice).

III. CONCLUSION

For the foregoing reasons, I would hold that the circuit court erred in (i) sustaining Crain's demurrer, (ii) dismissing Bradford's complaint with prejudice, and (iii) denying Bradford's motion for leave to file the proffered second amended complaint. Therefore, I respectfully dissent.